UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY GOODING,

    Plaintiff,

v.

NICHOLAS EVANS, MICHAEL
RAMELIS, STEPHEN ENNIS,
BRIAN OTTO, SMITH,
and JOHN DOES 1 and 2,

    Defendants.
_____/

Case No. 2:24-cv-12097
District Judge Mark A. Goldsmith
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 29)[1]

### I. Introduction

This is a civil rights case. Plaintiff Mark Anthony Gooding (Gooding), proceeding *pro se*, is suing the above-captioned defendants asserting claims for excessive force/assault, malicious prosecution, the withholding/destruction of evidence, and state law claims of malicious prosecution and assault and battery. (ECF No. 22, Second Amended Complaint). This matter was reassigned to District

---

[1] Upon review of the parties' papers, the undersigned deemed this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

Judge Mark. A. Goldsmith on March 25, 2025, and was referred to the undersigned for all pretrial matters the same day. (ECF No. 44).

Before the Court is Nicholas Evans, Michael Ramelis, Stephen Ennis, and Brian Otto's motion to dismiss. (ECF No. 29).[2] Gooding did not timely file a response and after several extensions of the response deadline, Gooding's response was received and docketed on May 13, 2025. (ECF No. 52). On May 19, Gooding filed a motion to amend his response (ECF No. 53), which was granted. Defendants did not file a reply and the time for doing so has passed. The matter is ready for decision.

For the reasons below, the undersigned recommends that defendants' motion to dismiss be GRANTED IN PART and DENIED IN PART. Specifically, if this recommendation is adopted, the case would proceed for now against Ennis, Otto, Smith, and the Doe defendants on Gooding's excessive force and state law assault and battery claims. All other claims would be dismissed, including all claims against Evans and Ramelis.

## II.   Factual Background

---

[2] The Court ordered Gooding to show cause and provide identifying information for defendant Smith so Smith can be served by the U.S. Marshal Service. (ECF No. 26). In response, Gooding indicated that he would identify Smith at a later date, so the Court found the order to show cause provisionally satisfied. (ECF No. 28). However, to date, Gooding has not provided further information. Gooding also has yet to provide the identities of either John Does. The matter of service on Smith and the John Does will be addressed, if necessary, in a future order.

The undersigned takes judicial notice that Gooding has been incarcerated with the Michigan Department of Corrections since 2008 as a result of a conviction for first degree home invasion. *See* ECF No. 29-2, Gooding's "Offender Tracking Information System" profile. On August 29, 2022, while he was on parole, Gooding alleges that Evans arrested him on a parole absconder warrant. (ECF No. 22, PageID.121). At some point during the arrest, Gooding alleges that Evans searched his pockets and then "began placing items back into [Gooding's] pocket." (*Id.*). Gooding saw "what appeared to be something white mixed in with [his] … candy and coins," which Evans returned to Gooding's pockets. (*Id.*). He was then escorted to a patrol vehicle and "began trying to search his pockets to see what Deputy Evans had placed in his pockets." (*Id.*, PageID.122). Gooding then "remembered that he had placed some fish in his car" and gave his car keys to another deputy so that the deputy could remove the fish from Gooding's car. (*Id.*).

Once Gooding arrived at the Oakland County jail, Evans "instructed" jail deputies "to strip search [him] for additional drugs," but no drugs were recovered. (*Id.*). Gooding "was placed in a cell for a substantial period of time." (*Id.*). At some point he asked Ennis "how long he would have to remain in the cell." (*Id.*). In response, Ennis "became aggressive in his speech," left the cell, and then "came back with several jail deputies and escorted [Gooding] between cell R-7 through cell R-11." (*Id.*). Gooding was then "thrown to the floor [and] assaulted with hits,

3

fist to back and head areas." (*Id.*). He says he reported the "assault that occurred to [him] on August 29, 2022 at approximately 11:30 pm in cell R-7 through cell R-11 by deputy sheriff Ennis, Otto, Smith, and several other deputy sheriffs." (*Id.*).

Gooding says that sometime later he was criminally charged in the Oakland County Circuit Court for an unstated offense, and that he "returned to the MDOC on October 14, 2022," for a parole violation. (*Id.*, PageID.123). On January 23, 2023, Gooding was returned to the Oakland County Jail for the criminal charge. (*Id.*). He believes that there should have been body camera footage of his August 29, 2022 arrest, but at a March 15, 2023 court hearing, "the Court stated as a judicially noted fact that the Sheriff's Office did not implement body cams until November and [Gooding] was arrested in August of 2022." (*Id.*, PageID.124).

Gooding's Oakland County case was ultimately dismissed without prejudice on August 15, 2023, which was the date set for trial. (*Id.*, PageID.126). Gooding returned to prison to continue serving his sentence for home invasion in the first degree on August 17, 2023, and has remained in custody since. (ECF No. 29-2).

### III. Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain

4

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank*, F.S.B., 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by pro se parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal

5

arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

## IV. Discussion

### A. Malicious Prosecution

Gooding's first claim is a federal claim against Evans for malicious prosecution under the Fourth Amendment. To avoid dismissal, Gooding must plead that (1) a criminal prosecution was initiated against him and that Evans made, influenced, or participated in the decision to prosecute, (2) there was a lack of probable cause for the criminal prosecution, (3) as a consequence of a legal proceeding, Gooding suffered a deprivation of liberty apart from the initial seizure, and (4) the criminal proceeding was resolved in Gooding's favor. *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010). Actual malice is not required for a malicious prosecution claim in the Sixth Circuit. *Id.*

Defendants say that Gooding has failed to allege facts suggesting that Evans made, influenced, or participated in a decision to prosecute him. This conclusion is borne out in Gooding's response, where he explains that he was picked up by Evans and another officer on a parole absconder warrant. (ECF No. 52, PageID.269). While Gooding contends that he never absconded from parole and that he spoke to someone with the absconding unit who indicated he would not be

6

arrested on such a warrant, the fact remains that even according to Gooding's allegations, the warrant was issued by someone other than Evans. (*Id.*). It therefore cannot be said that Evans made, influenced, or participated in that decision.

Gooding appears to argue that Evans was involved in the constitutional deprivation by planting something resembling drugs in Gooding's pocket. (*Id.*). However, this allegedly occurred after a warrant was already issued, which was the cause of Gooding's arrest. Further, at Gooding's preliminary examination, the prosecutor allegedly agreed that there was no written chain of custody for the "drugs," and the judge found probable cause for the arrest based on Gooding's actions and demeanor at the time of the incident, not based on the contents of his pockets. (*Id.*, PageID.270). Thus, while Gooding is correct that a finding of probable cause does not defeat a malicious prosecution claim where an officer tampers with evidence in a way that artificially creates probable cause, *see Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006), that is not the case here based on Gooding's own allegations. Gooding has thus failed to plead that Evans was involved in his prosecution and that there was a lack of probable cause for it.

Defendants also argue that Gooding's parole revocation was not a deprivation of liberty because parole may be revoked upon showing of a probable

7

parole violation. (ECF No. 29, PageID.172) (citing M.C.L. 791.238(1)). "[P]arole revocation does not deprive the individual of 'the absolute liberty to which every citizen is entitled,' but instead deprives him only of the 'conditional liberty' which is dependent on the parolee's willingness to observe the conditions of parole." *Maule v. Crawford*, No. 1:06-CV-236, 2009 WL 559876, at *6 (W.D. Mich. Mar. 4, 2009) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972)). A parolee is not afforded the "full panoply of rights" before parole is revoked, but revocation "must be accompanied by some level of due process." *Id.* Gooding's allegations do not fully flesh out whether his revocation would have resulted in a liberty deprivation, but the Court need not reach this issue because, as explained above, Gooding has failed to state a federal malicious prosecution claim based on Evans' lack of involvement and the state court's finding of probable cause.

Gooding also asserts a claim of malicious prosecution under state law. Under Michigan law, a plaintiff must allege that (1) the defendant "initiated a criminal prosecution against him," (2) "the criminal proceedings terminated in his favor," (3) the defendant "lacked probable cause for his actions," and (4) "the action was undertaken with malice or a purpose ... other than bringing the offender to justice." *Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 872 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1901 (2025) (internal citation omitted).

Gooding's state law claim fails at the first prong for the same reasons as described above, i.e., Evans' lack of involvement in the decision to prosecute him and the independent finding of probable cause. In addition, he has not alleged any facts to indicate malice, which is a requirement unique to the state law claim.

Overall, Gooding has failed to state viable claims for malicious prosecution claims under federal or state law.

### B. Fabrication of Evidence

Gooding alleges that "the actions of defendant Nicholas Evans and Michael Ramelis in plaintiff['s] detention being unlawfully continued in fabricating false evidence [violated] the Fourth Amendment of the United States Constitution." (ECF No. 22, PageID.127). "A Fourth Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure." *Robertson v. Lucas*, 753 F.3d 606, 616 n.5 (6th Cir. 2014). It is not enough for Gooding to allege that Evans and Ramelis fabricated evidence; Gooding must also allege that the fabricated evidence "*affected* the decision" to detain him. *Jackson v. City of Cleveland*, 925 F.3d 793, 816 (6th Cir. 2019).

Defendants are correct that this claim fails for essentially the same reason as the malicious prosecution claim. Evans was arrested and detained pursuant to a parole detainer warrant, which was issued before any evidence was allegedly planted on his person. This defeats a claim for fabrication of evidence. *See*

9

*Robertson*, 753 F.3d at 619 ("[B]ecause there was probable cause to arrest and detain appellants, they cannot prevail on their fabrication of evidence claim as they were not wrongfully seized."). Gooding is correct that under some circumstances, independent probable cause does not defeat a fabrication of evidence claim. *See Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015). Here, however, Gooding's arrest for parole absconding is unrelated to the evidence allegedly planted on him, and his charges based on that evidence were dismissed according to the complaint. He therefore has not alleged that the planted evidence had any effect on his detention, as he had already been detained for an unrelated reason. *See Jackson*, 925 F.3d 793. Therefore, this claim should also be dismissed.

C.   Brady Violation

Gooding alleges that "the actions of defendants Nicholas Evans and Michael Ramelis in plaintiff['s] detention being unlawfully continued [by] withholding and destroying material exculpatory evidence [violated] the Fourth Amendment of the United States Constitution." (ECF No. 22, PageID.127). Defendants have interpreted this claim to allege a Brady violation, and the undersigned agrees with this interpretation.

A claim on the basis of *Brady v. Maryland*, 373 U.S. 83, (1963) is properly construed as a violation of due process rights under the Fourteenth Amendment. Under *Brady*, prosecutors must turn over favorable evidence to the accused when

the evidence is material either to guilt or punishment. *Id*. at 89. Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (internal citation omitted). This obligation extends to evidence that is favorable to the accused "either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Police also have *Brady* obligations, but they "do not disclose evidence to criminal defendants directly. Instead, the police accumulate evidence and then ministerially deliver it to the prosecutor. The prosecutor then makes a discretionary legal judgment about whether the evidence is material and exculpatory." *Moldowan v. City of Warren*, 578 F.3d 351, 379-380 (6th Cir.2009) (internal citation omitted).

      The allegations are unclear as to whether body camera footage from either Ramelis or Evans existed. Gooding alleges that those defendants either withheld or destroyed material exculpatory evidence, and that a state court judge "stated as a judicially-noted fact that the Sheriff's Office did not implement body cams until November [of 2022]," but later says that the "body-worn camera discovery material" was accessed by Evans, Ramelis, and Gooding's defense counsel. (ECF No. 22, PageID.124, 127).

Defendants note that if the body camera footage existed and was accessible to Gooding's defense attorney, it was not in fact withheld. But whether the evidence was allegedly withheld, destroyed, or turned over, Gooding cannot plausibly state that it would have changed the result of any proceeding, because as he states in the second amended complaint, the related charge was dismissed. (*Id.*, PageID.126). Therefore, Gooding's claim based on withholding or destroying exculpatory evidence should be dismissed.

### D.    Failure to Intervene

For this claim, Gooding alleges that "the actions of defendant Michael Ramelis in Plaintiff's detention being unlawfully continued in failing to intervene [violated] the Fourth Amendment of the United States Constitution." (*Id.*, PageID.127). To state a claim for failure to intervene, Gooding would have to plead that Ramelis: (1) observed or had reason to know that the alleged constitutional harm would be or was being used, and 2) had both the opportunity and the means to prevent the harm from occurring. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

Gooding says that Ramelis was assigned his case, revised the report on the case, and participated in discovery. (ECF No. 52, PageID.277). According to Gooding, discovery included video footage from a parking garage that was "manipulated so a person viewing the video could not see that defendant Evans

was wearing a body-worn camera." (*Id.*). Gooding then concludes that Ramelis "directly participated, encouraged, authorized, or knowingly acquiesced in the alleged fabrication of evidence, manipulation of evidence, and destroying and withholding material exculpatory evidence," or "knew or should have known of his subordinates' unconstitutional actions and related misconduct." (*Id.*, PageID.277-278).

Defendants argue that "Gooding fails to allege any facts to support an inference that Ramelis knew of any unconstitutional activity by his fellow deputies as it relates to Gooding," and "does not provide any facts demonstrating that Ramelis could have intervened to prevent any alleged constitutional violation." (ECF No. 29, PageID.177). The undersigned agrees. Gooding's conclusory statements that Ramelis knew of and could have intervened with any alleged constitutional violations are insufficient to sustain a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, this claim should be dismissed.

E. Excessive Force and Assault/Battery

Gooding also alleges that "the actions of defendants Ennis, Otto, Smith, and [John Does] in using physical force against the plaintiff without need or provocation, or in failing to intervene to prevent the misuse of force, were done

13

maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." (ECF No. 22, PageID.127). "[T]he Eighth Amendment ... forbids the 'unnecessary and wanton infliction of pain' that constitutes 'cruel and unusual punishment,' and specifically conduct that is malicious and sadistic." *Coley v. Lucas County, Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992)).

There is both an objective and subjective component to an Eighth Amendment claim. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). "To determine whether the subjective component is met, [the Court] consider[s] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." *Tuttle v. Carroll Cty. Detention Ctr.*, 500 F. App'x 480, 481 (6th Cir. 2012) (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). "In assessing the objective component, [the Court] conduct[s] a contextual inquiry to determine whether the pain inflicted was 'sufficiently serious.' " *Tuttle*, 500 F. App'x at 481 (citing *Williams*, 631 F.3d at 383). "The extent of a prisoner's injury may suggest whether the use of force could plausibly have been thought necessary in a particular situation and may also provide some indication of the amount of force applied." *Tuttle*, 500 F. App'x at 481 (citing *Wilkins v. Gaddy*, 559 U.S. 34 (2010)).

14

Defendants argue that Gooding's excessive force claim should fail because "his complaint lacks any specific allegations of conduct by any of the individual defendants to plausibly suggest that this standard was met for each of them." (ECF No. 29, PageID.179). To establish liability against an individual defendant acting under color of state law, a plaintiff must show that the defendant was "personally involved" in the use of excessive force. *Burley v. Gagacki*, 729 F.3d 610 (6th Cir. 2013). "Each defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (citing *Dorsey v. Barber,* 517 F.3d 389, 399 n. 4 (6th Cir. 2008)).

Here, Gooding alleged the following:

> Defendant Evans instructed Oakland County jail deputies to strip-search Plaintiff for additional drugs, during which Plaintiff could not use the bathroom. After no drugs were recovered[,] Plaintiff was placed in a cell for a substantial period of time. Plaintiff inquired to Deputy Ennis as to how long he would have to remain in the cell before he was processed in. Defendant Ennis became aggressive in his speech toward Plaintiff. Defendant Ennis left the cell and came back with several jail deputies and escorted Plaintiff between cell R-7 through cell R-11. Plaintiff was thrown to the floor [and] assaulted with hits, fist to back and head areas.
>
> Plaintiff requested to see Internal Affairs concerning a[n] assault that occurred to Plaintiff on August 29, 2022 at approximately 11:30 p.m. in cell R-7 through cell R-11 by deputy sheriff Ennis, Otto, Smith and several other deputy sheriffs. Plaintiff explained that he is currently in therapy at the Michigan Brain and Spine Surgery Center on Rochester Road in Troy, Michigan, [and] that Plaintiff was assaulted with several hits, fist to back and head areas.

(ECF No. 22, PageID.122).

15

These allegations, taken as true at this stage in the case, are sufficient to state a claim for excessive force. Defendants contend that Gooding has impermissibly "lumped all defendants together in [this] claim and provided no factual basis to distinguish their conduct." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012). However, defendants have applied this principle too broadly. Gooding has clearly alleged that an assault occurred at a specific time and date by individuals who struck him with specified types of blows for malicious reason. That he does not know the identity of each officer, or which officers struck him with which blows, does not defeat his claim. He is entitled to proceed on this claim against Ennis, Otto, Smith, and the Doe defendants.

Gooding's state law assault and battery claims should survive for the same reason.

> Michigan law defines battery as an intentional, unconsented, and harmful or offensive touching of the person of another, or of something closely connected with the person. It defines assault as either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.

*Shumate v. City of Adrian, Michigan*, 44 F.4th 427, 450 n.12 (6th Cir. 2022) (cleaned up) (citing *People v. Reeves*, 458 Mich. 236, 240, 580 N.W.2d 433 (1998)). Defendants simply argue that this claim should be dismissed for the same reason as Gooding's excessive force claim, which as explained above should not be dismissed. The allegations above state a claim for assault and battery.

16

In sum, Gooding has alleged sufficient facts to make out a claim for excessive force and assault and battery to survive dismissal at this stage.

Defendants also argue that the court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over Gooding's state law claims "if the Court dismisses the federal claims." (ECF No. 29, PageID.181). However, the undersigned recommends that Gooding's excessive force claim remain, and therefore recommends that the Court retain jurisdiction over Gooding's related state law assault and battery claims.

## V.    Conclusion

For the reasons stated above, the undersigned recommends that defendants' motion to dismiss (ECF No. 29) be GRANTED IN PART and DENIED IN PART. If this recommendation is adopted, the case would proceed for now against Ennis, Otto, Smith, and John Doe defendants on Gooding's excessive force and state law assault and battery claims. All other claims would be dismissed, including all claims against Evans and Ramelis.

Dated: July 10, 2025  
Detroit, Michigan

s/Kimberly G. Altman  
KIMBERLY G. ALTMAN  
United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to

their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2025.

s/Emily Vradenburg
EMILY VRADENBURG
Case Manager
